**MUELLER COMPANY,**
**Plaintiff, Appellant,**

**v.**

**SOUTH SHORE BANK, Defendant,**
**Appellee.**

**No. 92-2145.**

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1993.

Decided April 22, 1993.

---

David M. Jones with whom James E. Howard, M. Katherine Willard, and Kirkpatrick & Lockhart, Boston, MA, were on brief, for plaintiff, appellant.

George W. Mykulak with whom Gary R. Greenberg, Louis J. Scerra, Jr., and Goldstein & Manello, P.C., Boston, MA, were on brief, for defendant, appellee.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge and STAHL, Circuit Judge.

STAHL, Circuit Judge.

In this appeal, we must determine whether defendant-appellee South Shore Bank ("South Shore") properly refused plaintiff-appellant Mueller Co.'s ("Mueller") request for payment under a letter of credit. Because the documents accompanying Mueller's request did not comply with the requirements of the letter of credit, we af-

firm the district court's ruling that the dishonor was proper.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

George A. Caldwell Company ("Caldwell") was a family-owned gas and waterworks supply company located in Stoughton, Massachusetts.[1] Caldwell purchased supplies on a regular basis from Mueller, a supplier in Atlanta, Georgia. By early 1990, Caldwell could no longer meet its payments to Mueller, and Mueller stopped shipping supplies.

As a condition to Mueller's resumption of shipments, Caldwell arranged for South Shore to issue an irrevocable standby letter of credit in favor of Mueller. The letter, dated May 24, 1990, and in the amount of $500,000, provided that if Caldwell failed to make payments for goods ordered and shipped after May 24, 1990, then Mueller could present a sight draft to South Shore for payment. The sight draft was to be accompanied by invoices "clearly evidencing that the goods described in said invoice(s) represent goods ordered and shipped after May 24, 1990."[2] By its terms, the letter of credit was to be governed by the Uniform Customs and Practice for Documentary Credits (1983 Version) (hereinafter "UCP").

With the assurance of the standby letter of credit, Mueller resumed shipments to Caldwell. Again, Caldwell was unable to meet its payments. Mueller notified South Shore in late October that it planned to draw on the letter of credit, and sent South Shore an "aged trial balance" which listed invoices that Mueller planned to present for payment.

---

1. Caldwell is not a party to the controversy before us.

2. The letter of credit stated in relevant part: [*South Shore*] *hereby establish[es] our irrevocable letter of credit in [Mueller's] favor available by your drafts drawn at sight and accompanied by documents specified below:*
1. A statement on the letterhead of Mueller Company, addressed as per this letter of credit, signed by an individual or individuals purporting to be authorized, stating: "Payment has been demanded of George A. Caldwell,

213 Turnpike Street, Stoughton, Ma. 02072–0006, not received and is still outstanding for more than 60 days from the relative invoice date(s). Our demand relates solely to goods ordered and shipped after May 24, 1990."
2. Copy(ies) of invoice(s) issued by Mueller Company purporting to represent the above transaction, marked "unpaid" and clearly evidencing that the goods described in said invoice(s) represent goods ordered and shipped after May 24, 1990.

On December 31, 1990, the expiration date of the letter of credit, Mueller presented a sight draft to South Shore in the amount of $221,996.11. The draft was accompanied by 163 invoices purporting to represent goods ordered and shipped after May 24, 1990. A considerable number of the invoices, however, listed order dates prior to May 24, 1990. South Shore sent a timely letter to Mueller refusing to honor the draft on the grounds that the "[i]nvoices presented do not clearly evidence that goods described represent goods ordered and shipped after May 24, 1990 as per ... the letter of credit."

Mueller thereafter filed a diversity action in district court, alleging that South Shore wrongfully dishonored the draft, arguing, *inter alia*, that South Shore knew or should have known that the invoices represented goods ordered and shipped after May 24, 1990. Upon motion for summary judgment by South Shore, the district court dismissed Mueller's cause of action on the grounds that the invoices submitted by Mueller did not comply with the terms of the letter of credit. For the reasons that follow, we affirm.

## II.

### DISCUSSION

#### A. Dishonor of the Draft

■ Under the provisions of the UCP, "[b]anks must examine all documents with reasonable care to ascertain that they appear, on their face, to be in accordance with the terms and conditions of the credit." UCP, Art. 15. Moreover, letters of credit "by their nature, are transactions separate from the sales or other contract(s) on which they may be based, and banks are in no way concerned with or bound by such contract(s)." UCP, Art. 3. *See also Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir.1990)

("[C]ourts have typically considered the letter of credit as 'independent' of the contract."). Thus, in determining their rights and obligations under a letter of credit, "parties are *not* required to look beyond the face of the documents presented." *Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolána de Navegacion*, 765 F.2d 1306, 1310 (5th Cir.1985) (emphasis in original). *See also* UCP, Art. 4 ("[A]ll parties concerned deal in documents, not in goods, services and/or other performances to which the documents may relate.").

■ In this case, the letter of credit required that the sight draft be accompanied by invoices "clearly evidencing" that the goods were "ordered and shipped after May 24, 1990." [3] Surely, an invoice with an order date *prior* to May 24, 1990 does not "clearly evidence" an order placed after that date. Rather, such an invoice directly contradicts the terms of the letter of credit.[4] In contending that South Shore knew or should have known that these invoices represented goods that had been *reordered* and shipped subsequent to May 24, 1990, Mueller is essentially urging that South Shore should have looked beyond the face of invoices to the underlying transaction. As we have stated, however, South Shore was under no such obligation. *See, e.g., Auto Servicio*, 765 F.2d at 1310; UCP, Art. 4. Because the invoices failed to meet the requirements of the letter of credit, we find that dishonor was proper.

#### B. Additional Arguments

Our ruling that dishonor was proper, as the district court properly pointed out below, is dispositive of Mueller's additional arguments.

---

**3.** Mueller argues that the qualifying term "after May 24, 1990" applies only to "shipped," and not to "ordered." Obviously, goods would not be shipped without being ordered at some date, and if the phrase were read as meaning that the date was of no consequence, there would be no point to the word "ordered" being present at all. Accordingly, we agree with the district court that the term "after May 24, 1990" unambiguously modifies both "shipped" and "ordered."

**4.** We disagree with Mueller's characterization of the improper order dates as "technical inconsis-

tencies." *See, e.g., Exotic Traders Far East Buying Office v. Exotic Trading U.S.A., Inc.*, 717 F.Supp. 14, 17 (D.Mass.1989). Unlike the documents in *Exotic Traders* which the district court found "could not have misled anyone," *id.*, the non-conforming order dates in the instant case signaled that the goods had been ordered *prior* to May 24, 1990. By its terms, the letter of credit did not bind South Shore to honor such invoices.

Moreover, we reject Mueller's argument that South Shore could or should have relied on the "invoice" dates, rather than the "order" dates, in

We reject Mueller's contention that the invoices with valid order dates constituted separate or partial drawings on the letter of credit. While the letter of credit did allow partial drawings, Mueller chose to draw upon the letter of credit only once with a single sight draft presented on the letter's expiration date. Mueller directs us to no authority, nor have we located any, which stands for the proposition that an issuing bank must pay a *portion* of a documentary sight draft on the grounds that *some* of the documents comply. Because the "valid" invoices presented did not meet the amount of the sight draft, the bank properly declined to honor the entire draft.

Finally, we find nothing in the record to support Mueller's contention that the dishonor amounted to bad faith or an unfair business practice.[5]

### III.

### CONCLUSION

Because Mueller has presented no genuine issue as to any material fact, the entry of summary judgment in favor of South Shore was proper as a matter of law. Accordingly, the order of the district court is

*Affirmed.*

---

determining whether the invoices complied with the letter of credit. While it appears that most or all of the invoices had invoice dates after May 24, 1990, the nonconforming order dates were sufficient to justify dishonor. *See, e.g.,* UCP, Art. 15 ("Documents that appear, on their face, to be inconsistent with one another will be considered as not appearing, on their face, to be in accordance with the terms of the letter of credit.").

5. In arguing that South Shore's dishonor was in bad faith, Mueller relies almost exclusively on the fact that Caldwell expressed an initial willingness to waive the documentary discrepancies between the invoices and the letter of credit. This argument is based on a misunderstanding of the doctrine of waiver as it applies to letter of credit transactions. While Caldwell may waive its *own* right to insist on strict compliance, it may not waive South Shore's right in this respect. *See e.g., Cooperative Agricole Groupe-*

*ment de Producteurs Bovins de L'Ouest v. Banesto Banking Corp.,* 1989 WL 82454, *23 (S.D.N.Y. July 19, 1989) ("Any waiver by the [customer] merely effects the contract between the bank and the [customer]. Any other interpretation of the waiver doctrine would emasculate the UCP requirements for amending a letter of credit."). Accordingly, we find no merit in Mueller's argument that Caldwell's willingness to waive indicates that South Shore proceeded in bad faith.

Equally unavailing is Mueller's estoppel argument. Mueller's late October letter, which included the "aged trial balance," and which stated that Mueller intended to draw on the letter of credit, did not include any actual invoices. Thus, South Shore's failure to object to the October notification letter did not estop it from later rejecting the draft due to nonconforming invoices.

To the extent that Mueller makes other waiver, bad faith, or estoppel claims, we find them to be without merit.