**WESTERN INTERNATIONAL FOREST PRODUCTS, INC., Plaintiff,**

v.

**SHINHAN BANK, Defendant.**

93 Civ. 7301 (MGC).

United States District Court, S.D. New York.

Aug. 16, 1994.

Seward & Kissel by M. William Munno, New York City, for plaintiff.

Sullivan, Donovan, Bond & Bonner by Thomas J. Bonner, New York City, for defendant.

## OPINION

CEDARBAUM, District Judge.

Plaintiff was the beneficiary of an irrevocable letter of credit which defendant refused to honor. Both sides move for summary judgment under Fed.R.Civ.P. 56. For the reasons discussed below, defendant's motion is granted and plaintiff's motion is denied.

### Background

The following facts are undisputed. In 1993, plaintiff Western International Forest Products, Inc. contracted to sell lumber to Nam Moon Co., a Korean company. The logs were shipped from Alaska to Korea. To pay for the timber, Nam Moon arranged for a Korean bank, defendant Shinhan Bank ("Shinhan Bank Korea"), to issue an irrevocable letter of credit in favor of Western. The drawee on the letter of credit was Shinhan Bank's branch office in the City of New York. ("Shinhan Bank New York"). The letter of credit provides that it is subject to the 1983 revision of the Uniform Customs

and Practices for Documentary Credits (the "UCP").

The letter of credit described one of the documents required for payment as follows: "Inspection certificate must be issued by Mr. Sam Tae Shin (passport No. DG0101712) of Nam Moon Lumber Co., In Korea." Shin is the president of Nam Moon. On July 9, 1993 Shin inspected the logs in Alaska. He then visited Western's offices in Portland, Oregon, and returned to Korea. Back in Korea, Shin executed the inspection certificate required by the letter of credit and faxed it to Western. The inspection certificate is dated July 26, 1993, but Western did not receive the facsimile until July 28, 1993.

After receiving the facsimile inspection certificate, Western shipped the logs to Nam Moon in Korea. Someone at Western stamped the facsimile inspection certificate "original" and sent it to A.C. Wilson Co., Western's freight forwarder. On August 19, 1993, A.C. Wilson's senior partner, Arlene Wilson, presented documents and a payment draft to Shinhan Bank New York and requested payment under the letter of credit for Western. A Shinhan Bank New York employee, Diane Masone, examined the documents presented and noted that the inspection certificate was a facsimile and did not bear an original signature. On August 20, 1993, Masone telephoned Wilson, advised her of the problem, and told her that Shinhan Bank New York would refuse payment. Wilson asked Masone to cable Shinhan Bank Korea and request authorization to pay on the letter of credit. Masone did.

Masone's cable to Shinhan Bank Korea reads in part:

> DOCUMENTS RECEIVED UNDER THE ABOVE MENTIONED L/C WITH THE FOLLOWING DISCREPANCIES: ... 1) FAX COPY OF INSPECTION CERT. WAS PRESENTED (NO ORIGINAL) PLEASE URGENTLY ADVISE IF WE MAY PAY.

On August 25, 1993 Shinhan Bank Korea cabled back:

> PLS BE INFORMED THAT OUR CUSTOMER REFUSED TO ACCEPT MENTIONED DISCREPANCIES.

Masone then told Wilson that Shinhan Bank New York refused to pay and returned the documents that had been presented the week before.

Shinhan Bank argues that it is entitled to summary judgment because Western never presented an original inspection certificate and therefore violated the strict compliance rule. Western argues that Shinhan Bank is precluded from asserting a strict compliance defense because Shinhan Bank Korea consulted Nam Moon and did not decide whether to pay the letter of credit solely on the basis of the documents presented.

*Discussion*

■ This case presents two novel questions under the UCP. Although the UCP is not law, it is made applicable by agreement of the parties to most letters of credit. *See Alaska Textile Co., Inc. v. Chase Manhattan Bank*, 982 F.2d 813, 816 (2d Cir.1992) (discussing "unique status" of the UCP). Furthermore, the New York UCC expressly does not apply to letters of credit incorporating the UCP. N.Y.U.C.C. § 5–102(4). The issues presented are: (1) whether a facsimile is an original under UCP Article 22c; and (2) whether UCP Article 16b precludes an issuer from asking a customer to waive a defect in presentment.

1. *Is a Facsimile an Original?*

■ A fundamental tenet of letter of credit law is that a beneficiary must present precisely conforming documents in order to be paid. Under the "strict compliance" rule, "the terms and conditions of a letter of credit must be strictly adhered to." *Corporacion de Mercadeo Agricola v. Mellon Bank International*, 608 F.2d 43, 47 (2d Cir.1979). As Lord Sumner stated in an oft-quoted remark, this standard leaves "no room for documents which are almost the same or which will do just as well." *Equitable Trust Co. v. Dawson Partners, Ltd.*, 27 Lloyd's List Law Rep. 49, 52 (H.L.1927); *see also Alaska Textile*, 982 F.2d at 816 (discussing importance of the strict compliance rule); *Voest–Alpine International Corp. v. Chase Manhattan Bank*, 707 F.2d 680, 682–83 (2d Cir.1983) (same).

One manifestation of the strict compliance rule is the long-standing practice among issuers to require original documents unless the letter of credit stipulates otherwise. Albert J. Givray, *Letters of Credit*, 45 Bus.Law. 2381 (1990); *Trifinery v. Banque Paribas*, 762 F.Supp. 1119, 1121 (S.D.N.Y. 1991) (beneficiary presented original but issuer refused to honor because letter of credit required a copy of invoice). The 1983 version of the UCP does not explicitly require original documents, but that rule is implicit in Article 22c:

> Unless otherwise stipulated in the credit, banks will accept as originals documents produced or appearing to have been produced:
>
> i. by reprographic systems;
>
> ii. by, or as the result of, automated or computerized systems;
>
> iii. carbon copies,
>
> if marked as originals, always provided that, where necessary, such documents appear to have been authenticated.

Moreover, the ICC Group of Experts of the ICC Banking Commission has interpreted Article 22c as requiring an original document unless the letter of credit says or allows otherwise. Jan Dekker, ed., *More Case Studies on Documentary Credits* 22, ICC Pub. No. 489 (1991). The opinions of the Group of Experts, of course, are not law, but they are entitled to some persuasive weight in interpreting the UCP. An "originals only" rule is in keeping with the strict compliance rule. It avoids a potential uncertainty about when an issuer must honor a beneficiary's draft.

Western argues that the document Arlene Wilson presented to Shinhan Bank New York complied with the literal language of Article 22c. The facsimile was, Western observes, produced by an "automated or computerized system," was marked as an original, and "appears to have been authenticated." The difficulty with this argument is that Article 22c (and all of the cases and commentary that have been cited by the parties) are silent as to *who* must mark a document as an original and authenticate it in order for it to be considered an original.

Under Western's argument, Article 22c anticipates marking and authentication by beneficiaries. That cannot be. It cannot be that the beneficiary of a letter of credit can create conforming documents simply by marking them originals and doing something that "appears" to authenticate the documentation. For Article 22c to make sense it must mean that only the issuer of a document can designate a copy as an original by marking it as such and authenticating the mark.

Under this rule, the facsimile Western presented to Shinhan Bank New York was nonconforming. Western, not Nam Moon or Shin, marked the document "original." Nor did Nam Moon or Shin do anything that can be construed as authenticating the facsimile. Accordingly, Western's presentment was defective.

### 2. Can the Issuer Seek Waiver from the Customer?

UCP Article 16b requires an issuing bank to examine documents only:

> If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of the documents alone, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.

Western argues that Shinhan Bank is precluded from asserting the defense of nonconforming documents because it did not decide whether to pay "on the basis of documents alone." After noticing that Western had presented the facsimile, Shinhan Bank New York, at the request of Western's freight forwarder, sought advice from Shinhan Bank Korea, which in turn consulted the account party, Nam Moon. The bank formally refused to honor Western's draft after Nam Moon refused to waive the discrepancy.

Western's argument must be rejected, for two reasons. First, Western was not injured by the bank's seeking advice from its customer. Before Shinhan Bank Korea consulted

Nam Moon, Shinhan Bank New York had already decided not to honor Western's draft because the documents presented were non-conforming and had so advised Western's freight forwarder. Asking whether Nam Moon would waive the defect could only have helped Western.

■■■ Second, it is a routine procedure for issuing banks to seek waivers from customers when a beneficiary presents non-conforming documents. This practice is necessary because approximately half of all presentments are defective. *See Alaska Textile Co., Inc. v. Chase Manhattan Bank*, 982 F.2d 813, 824 (2d Cir.1992). In some instances the issuer consults the customer at the express request of the beneficiary. *Alaska Textile*, 982 F.2d at 817 (documents were presented "on an approval basis"); *see also Stewart Hall Chemical Corp. v. Ideal Trucking Co.*, 551 F.Supp. 289, 292 (S.D.N.Y.1982) (beneficiary seeking waiver contacted customer directly). In other cases the issuer contacts the customer without a formal request from the beneficiary. *See Mueller Co. v. South Shore Bank*, 991 F.2d 14, 17 n. 5 (1st Cir.1993) (customer "expressed initial willingness to waive the documentary discrepancies"); *Pro–Fab, Inc. v. Vipa, Inc.*, 772 F.2d 847, 850 (11th Cir.1985) (at issuer's request, customer waived defects on three of four presentments); *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 237–38 (5th Cir.1983) (although not required, it is "good commercial etiquette" for issuer to seek waiver from customer); *Beckman Cotton Co. v. First National Bank*, 666 F.2d 181, 183 (5th Cir.1982) (bank notified beneficiary it would not honor unless customer waived discrepancies in documents); *Petra International Banking Corp. v. First American Bank*, 758 F.Supp. 1120, 1123 (E.D.Va.1991), *aff'd*, 953 F.2d 1383 (4th Cir.1992) (issuing bank sought and received waiver of discrepancies from customer); *Banco Espanol de Credito v. State Street Bank & Trust Co.*, 266 F.Supp. 106, 109 (D.Mass.), *rev'd on other grounds*, 385 F.2d 230 (1st Cir.1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968) (nothing improper in issuer seeking waiver from customer); *CT Chemicals v. Vinmar Impex, Inc.*, 81 N.Y.2d 174, 178, 597 N.Y.S.2d 284, 286, 613 N.E.2d 159, 161 (1993) (customer "refused to waive the discrepancies"); *Supreme Merchandise Co., Inc. v. Chemical Bank*, 70 N.Y.2d 344, 347, 520 N.Y.S.2d 734, 735, 514 N.E.2d 1358, 1359 (1987) ("documents contained discrepancies from the letter of credit which were waived by the account party"). Whether an issuer consults the customer independently or at the beneficiary's request makes no difference. Once an issuer has determined that a beneficiary has presented non-conforming documents (and therefore has already decided not to honor the beneficiary's draft) it should be able to seek a waiver from the customer without being precluded from asserting the non-conformity as a defense in a later suit for wrongful dishonor brought by the beneficiary. *But cf. Full–Bright Industrial Co. v. Lerner Stores, Inc.*, 818 F.Supp. 619, 622 (S.D.N.Y.1993) (holding that UCP Article 16b precludes an issuer from seeking a waiver from a customer).

■■ As the Second Circuit held in a similar setting:

> The letter of credit is intended to grease the wheels of trade and commerce. As many as half of the demands for payment under letters of credit are discrepant, yet in the vast majority of cases, the account party waives the discrepancies and authorizes payment. This process is efficient, and the law should encourage it, particularly when the beneficiary has acknowledged that its documents are discrepant and has specifically requested that the issuer consult the account party.

*Alaska Textile Co., Inc. v. Chase Manhattan Bank*, 982 F.2d 813, 824 (2d Cir.1992). That the beneficiary here neither "acknowledged that its documents [were] discrepant," nor "specifically requested that the issuer consult the account party," does not undermine the wisdom of this rule. Defendant is not, therefore, precluded from asserting that the documents presented by plaintiff were non-conforming.

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion is denied.

SO ORDERED.