NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-701                                      Appeals Court

PROQUIP LIMITED  vs.  NORTHMARK BANK.

No. 22-P-701.

Essex.      March 8, 2023. – August 18, 2023.

Present:  Massing, Hershfang, & D'Angelo, JJ.

Uniform Commercial Code, Letter of credit.  Letter of Credit.
    Contract, Letter of credit, Performance and breach.
    Damages, Breach of contract.  Practice, Civil, Summary
    judgment.

Civil action commenced in the Superior Court Department on
November 3, 2021.

The case was heard by Kristen R. Buxton, J., on motions for
summary judgment.

Thomas N. O'Connor for the defendant.
Edward J. Denn for the plaintiff.

HERSHFANG, J.  This case asks us to interpret a portion of

the Uniform Commercial Code -- Letters of Credit, G. L. c. 106,

§§ 5-101 et seq.  "A standby letter of credit acts to assure a

seller that it will be promptly paid in the case of default by

the buyer, and is payable upon certification of the buyer's

nonperformance of the underlying contract." E & H Partners v. Broadway Nat'l Bank, 39 F. Supp. 2d 275, 280 (S.D.N.Y. 1998), citing J.F. Dolan, Letters of Credit, Commercial and Standby Credits ¶ 1.04 (rev. ed. 1996). "[T]he letter of credit serves the basic purpose of providing an inexpensive means of assuring payment in the course of a transaction to the party that furnishes the goods or services. It does this by creating a primary obligation on the part of the issuer of the letter of credit to pay upon the party's compliance with the terms and conditions enumerated in the letter, which usually calls for the presentation of specified documents." Insurance Co. of N. Am. v. Heritage Bank, N.A., 595 F.2d 171, 173 (3d Cir. 1979).

Here, we must determine whether, under G. L. c. 106, § 5-108's "strict compliance" standard, an issuer of a letter of credit must pay the beneficiary where the letter of credit required presentment of "the original of and all amendments, if any, to this Letter of Credit," and the beneficiary presented the original letter of credit and a photocopy of its sole amendment. We conclude that payment is not required in such circumstances. We therefore reverse the allowance of summary judgment for the plaintiff beneficiary and direct entry of summary judgment in favor of the defendant bank.

Background. The plaintiff, ProQuip Limited (ProQuip), a Scottish company, makes golf apparel. It entered into an

agreement with Marblehead Weather Garments, LLC (MWG) under which MWG would buy and resell the plaintiff's apparel. The agreement required MWG to procure and provide a letter of credit guaranteeing payment to ProQuip. From the defendant, Northmark Bank (bank), MWG procured the standby letter of credit at issue in this suit (LoC), which designated ProQuip as the beneficiary.

The LoC contained the following term: "Credit shall be available with us by payment against presentation of . . . the original of and all amendments, if any, to this Letter of Credit for our endorsement." The LoC also stated that it was "subject to the Uniform Customs and Practices for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600 [(UCP 600)] and the laws of the Commonwealth of Massachusetts."

The LoC expired one year after its date of issue. Two days before the expiration date, at the request of MWG, the bank issued an amendment to the LoC, titled "Amendment 1," which (1) extended the LoC by one year, and (2) added a provision for its automatic extension, unless the bank notified ProQuip, in writing, forty-five days before the expiration date that the LoC would not be renewed. Amendment 1 specified, "All other terms and conditions of the subject Letter of Credit No. 2011161 remain unchanged and are hereby ratified and confirmed."

By the automatic renewal process set out in Amendment 1, the LoC was renewed for many years until, in 2020, the bank timely notified ProQuip that the LoC, as amended, would not be renewed. Six days before the expiration date, ProQuip made a demand for payment under the LoC. The demand was accompanied by the original LoC. However, ProQuip did not present the original of Amendment 1. Rather, it provided a copy of Amendment 1, together with a document entitled, "Original Document Affidavit and Indemnity," in which ProQuip's company secretary (1) averred that a diligent search had failed to locate the original Amendment 1, and (2) undertook to hold the bank harmless from an enumerated list of potential liabilities relevant to Amendment 1.[1] The bank refused to honor the demand because ProQuip "ha[d] not presented to [it] the original of Amendment 1 with [ProQuip's] Demand for Payment as required by the terms of the subject Letter of Credit as amended." ProQuip commenced an action in the Superior Court alleging breach of contract and

---

[1] ProQuip averred that it "hereby defends, indemnifies and holds harmless the Issuer, its successors, officers, directors, employees, managing agents and assigns, of and from any and all demands, claims, causes of action, liabilities, losses, cost or damage, including, but not limited to, reasonable attorneys' fees, arising out of, pertaining to, or in any manner connected with or related to the First Amendment not arising from the negligence or willful misconduct of the Issuer or any of its officers, directors, owners, employees or agents."

seeking declaratory judgment pursuant to G. L. c. 231A, §§ 1 et seq.

On cross motions for summary judgment, the judge allowed ProQuip's motion. In so doing, she applied rules of contract interpretation and concluded that the LoC did not "clearly require presentment of the original of Amendment 1 for payment." After acknowledging that strict compliance was the applicable standard under Massachusetts law, she reasoned that, in the circumstances, there was "no risk that [the bank] will be harmed" and that equity supported judgment in favor of ProQuip. This appeal followed.

Discussion. We review the allowance of summary judgment de novo to determine whether, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted). Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). "When parties have filed cross motions for summary judgment, 'we view the evidence in the light most favorable to the party against whom summary judgment was entered.'" Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021), quoting Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021).

A letter of credit is "a definite undertaking . . . by an issuer to a beneficiary . . . to honor a documentary

presentation by payment or delivery of an item of value." G. L. c. 106, § 5-102 (a) (10). The statute requires, with an exception not relevant here, that "an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in section 5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply." G. L. c. 106, § 5-108 (a). Subsection (e) provides that "[a]n issuer shall observe standard practice of financial institutions that regularly issue letters of credit. Determination of the issuer's observance of the standard practice is a matter of interpretation for the court." G. L. c. 106, § 5-108 (e).

By its terms, the LoC was also subject to UCP 600, which, although not law, "is made applicable by agreement of the parties to most letters of credit." Western Int'l Forest Prods., Inc. v. Shinhan Bank, 860 F. Supp. 151, 153 (S.D.N.Y. 1994). Article 17(a) of UCP 600 states, "At least one original of each document stipulated in the credit must be presented."

ProQuip's presentment included the original LoC, but only a copy of Amendment 1. For payment, the LoC required presentment of "the original of and all amendments, if any, to this Letter of Credit for our endorsement." The language is not a paragon

of clarity, and, were we to apply contract principles, it would not be unreasonable to construe it as requiring presentment of the original of the letter of credit, along with all amendments (without specifying originals or copies).

In the circumstances, however, we reach the opposite conclusion. "Letters of credit are unique commercial instruments. . . . Traditional contract rules apply 'only to the extent that contract principles do not interfere with the unique nature of credits.'" Mutual Export Corp. v. Westpac Banking Corp., 983 F.2d 420, 423 (2d Cir. 1993), citing J.F. Dolan, Letters of Credit ¶ 2.02, at 2-5 (2d ed. 1991).[2] "[T]he letter of credit serves the basic purpose of providing an inexpensive means of assuring payment in the course of a transaction to the party that furnishes the goods or services." Insurance Co. of N. Am., 595 F.2d at 173. "[E]ssential to the

---

[2] Professor Dolan criticizes "the tendency of common-law courts to weaken the strict law of letters of credit when there is a perception that the operation of that law will yield an unfair result. A desire to protect consumers and an awareness of asymmetry in the negotiating strength of contracting parties prompted that tradition in the law of contracts. Importing this tradition into letter of credit law harms this credit device. By relaxing strict rules of performance and introducing equitable notions of good faith, unconscionability, and the like, courts have substituted a continuum for a binary approach and have rendered problematic the effort of reducing to express terms the conditions of a contracting party's undertaking. There appears to be general agreement in some situations that these departures from strict contract rules are worth the cost." J.F. Dolan, 1 Letters of Credit § 6.02 (2022).

viability of this device is the certainty that it provides. . . . If courts deviate from the rule of strict compliance and insist in certain undefined situations that banks make payments notwithstanding the fact that the beneficiary failed to comply with the terms stipualated in the letter of credit, the certainty that makes this device so attractive and useful may well be undermined, with the result that banks may become reluctant to assume the additional risks of litigation." Id. at 176.

The LoC is governed by Massachusetts law, the relevant portion of which requires that an issuer "observe standard practice of financial institutions that regularly issue letters of credit." G. L. c. 106, § 5-108 (e). "Standard practice" derives from Article 17(a) of UCP 600, which requires presentment of an original of "each document stipulated in the credit."[3] See Western Int'l Forest Prods., Inc., 860 F. Supp. at 154 ("One manifestation of the strict compliance rule is the long-standing practice among issuers to require original documents unless the letter of credit stipulates otherwise"). The parties agreed that "the words 'copy' or 'copies' are not in

---

[3] We are unpersuaded by ProQuip's argument that the bank was required to submit UCP 600 in evidence. The UCP 600 was referenced at the summary judgment hearing and ProQuip did not make this argument or otherwise object. Where this argument was not raised below, it is waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) ("issue not raised or argued below may not be argued for the first time on appeal" [citation omitted]).

9

the LoC or in Amendment No. 1."  Thus, we analyze the propriety of the defendant's dishonor through the lens of those cases in which the letter of credit called for an original, but none was presented.  See e.g., LaBarge Pipe & Steel Co. v. First Bank, 550 F.3d 442, 451-452 (5th Cir. 2008) (where letter of credit required presentment of "the original Irrevocable Letter of Credit," facsimile copy was not sufficient to require draw); Bisker v. Nationsbank, N.A., 686 A.2d 561, 563, 567 (D.C. Cir. 1996) (where letter of credit required that demand for payment be accompanied by "[o]riginal of the promissory note," rejection of presentment was appropriate when beneficiary presented copy); Vanden Brul v. MidAmerican Bank & Trust Co., 820 F. Supp. 1311, 1314-1315 (D. Kan. 1993) (dishonor upheld where plaintiffs presented photocopy of note but letter of credit called for presentment of "the original promissory note").  We conclude, therefore, that the LoC required presentment of the original Amendment 1 and that ProQuip's presentment of a copy of Amendment 1 did not strictly comply with the LoC's terms.

Our conclusion is bolstered by our review of the differing versions of Amendment 1 provided by the parties.  "The virtues of letters of credit include their simplicity, reliability, and predictability which arise from and depend on the limitation of the issuer's duties to the ministerial application of a letter's terms.  Since an issuer serves a ministerial role, to require

that an issuer determine the substantiality of any discrepancies in document presentation is inconsistent with the issuer's function."  J.F. Dolan, 1 Letters of Credit § 4.08[3] (2022).  "When a court considers the compliance of documents, it must remember that the document examiner sits at a desk with the credit, the documents, and a copy of the applicable UCP.  The examiner does not have files of prior transactions, may not know the applicant or beneficiary, probably knows nothing of their industry, and does not have a lawyer at his or her elbow."  Id. at § 6.02.  While the version offered by the bank included three handwritten signatures at the bottom of each page of the document, the photocopy presented by ProQuip included just one.  Thus, the two versions differed from one another, further emphasizing why the original was required.  It was beyond the scope of the bank's ministerial role to determine that the variance between the copy presented and the original was "unimportant" such that the presentment strictly complied with the requirement for originals.

The case urged upon us by ProQuip, Ladenburg Thalmann & Co. v. Signature Bank, 128 A.D.3d 36 (N.Y. 2015), does not dictate a contrary result.  In Ladenburg Thalmann & Co., the court held that the plaintiff's failure to present an original amendment to the letter of credit did not justify the defendant's dishonor.  Id. at 45-46.  In that case, however, the missing amendment had

been superseded by later amendments and the beneficiary had presented those originals.  Id. at 39.  "Even under the strict compliance standard," the court concluded that "some variances may be allowable, if they do not 'call upon the reviewing bank officer to exercise discretion on a commercial matter, [but] only to exercise discretion as a banker,' or if the errors '[do] not compel an inquiry into the underlying commercial transaction.'"  Id. at 43, quoting E & H Partners, 39 F. Supp. 2d at 284.  Here, by contrast, the variance concerned the way Amendment 1, which embodied the current terms of the LoC, was presented.  As the LoC required presentment of "the original of and all amendments, if any, to this Letter of Credit," and as standard practice, incorporated by the LoC, requires originals, we are persuaded that, in these circumstances, the variance was not minor and the defendant permissibly dishonored payment.  Accordingly, we reverse the judgment in favor of ProQuip and remand the case for entry of judgment in favor of the defendant.

So ordered.