[776 NYS2d 1]

J.P. DOUMAK, INC., Respondent, v WESTGATE FINANCIAL CORP., Appellant.

First Department, February 19, 2004

## APPEARANCES OF COUNSEL

*Lennon & Klein, P.C. (David P. Lennon* of counsel), for respondent.

*Strassberg & Strassberg, P.C. (Todd Strassberg* of counsel), for appellant.

## OPINION OF THE COURT

FRIEDMAN, J.

In May 2000, plaintiff J.P. Doumak, Inc. (Doumak) entered into an agreement to sell a quantity of fabric to John Michaels, Inc. (Michaels). To facilitate this sale, Michaels procured the issuance by defendant Westgate Financial Corp. (Westgate) of an instrument denominated a "Guaranty," dated June 22, 2000. The "Guaranty" set forth Westgate's commitment to pay Doumak the purchase price for the fabric upon Doumak's presentation to Westgate of specified documents evidencing Doumak's performance (the invoice, bill of lading and packing list) and, in addition, a "written demand . . . for payment under this guaranty . . . prior to August 21, 2000." We deem the "Guaranty," notwithstanding its label, to constitute a letter of credit (*see* UCC 5-102, Comment 6).

On June 30, 2000, Doumak, having shipped the fabric to Michaels, sent Westgate the evidentiary documents required by the letter of credit. The evidentiary documents were transmitted to Westgate under cover of correspondence that stated: "If you should require any additional documentation or information, please do not hesitate to contact us." Doumak's correspondence of June 30, 2000 did not, however, contain any language demanding or requesting that payment be made at that time. Notwithstanding the letter of credit's express requirement that a demand for payment be made prior to August 21, 2000, the first time Doumak contacted Westgate after June 30 was September 7, 2000—2¹/₂ weeks after the August 21 deadline—when Doumak belatedly sent Westgate a letter demanding payment. Westgate rejected the September 7 demand as untimely.

In April 2001, Doumak commenced this action against Westgate to obtain payment under the letter of credit. On the parties' respective motions for summary judgment, the IAS court ruled in favor of Doumak, and Westgate has appealed from the ensuing judgment. Because the result reached by the IAS court is inconsistent with the principle that a party to a letter of credit is held to a standard of strict compliance with the instrument's terms (*see e.g. Nissho Iwai Europe v Korea First*

*Bank,* 99 NY2d 115, 121 [2002]; *Lustrelon, Inc. v Prutscher,* 178 NJ Super 128, 140, 428 A2d 518, 524 [1981]; *see also* NJ Rev Stat § 12A:5-108 [a]; UCC 5-108 [a]), we now reverse.[1]

At the outset, it is important to recognize that presentation of the evidentiary documentation required by the letter of credit could not, by itself, be deemed to satisfy the letter of credit's additional "written demand" requirement. While the letter of credit required that Doumak send Westgate the documentation evidencing Doumak's contractual performance within four days after shipment of the goods to Michaels (the latest acceptable date for which was specified to be June 30, 2000), the letter of credit also provided that it would expire "unless written demand upon [Westgate] for payment under this guaranty is made *prior to August 21, 2000*" (emphasis added). Thus, to hold the written demand requirement satisfied by timely presentation of the required evidentiary documentation would render nugatory the letter of credit's separate written demand provision. Such a result is contrary to the rule that a letter of credit, like any writing, should be construed so as to "give full effect to all parts of the writing and every word of it, if possible" (*AXA Assur., Inc. v The Chase Manhattan Bank,* 339 NJ Super 22, 28, 770 A2d 1211, 1215 [2001] [citation and internal quotation marks omitted]). Since the letter of credit thus required a written demand for payment, the issuer was not to make payment under the instrument if no written demand were timely submitted, even if all other required documents were in order (*see* Dolan, Letters of Credit: Commercial and Standby Credits ¶ 1.07 [1] [a], at 1-54 [rev ed 2003]; McCullough, Letters of Credit § 3.02 [14] [b], at 3-44 [rev ed 2003]). As provided by the Uniform Commercial Code (as enacted in both New Jersey and New York), "an issuer *shall* dishonor a presentation that does not appear . . . to comply" (emphasis added) with the terms and conditions of a letter of credit (NJ Rev Stat § 12A:5-108 [a]; UCC 5-108 [a]).

Having established that Doumak's presentation of the relevant evidentiary documentation did not itself satisfy the letter of credit's additional written demand requirement, we turn to the central question posed by this appeal, namely, whether the written demand requirement was satisfied by the aforemen-

---

1. Although it appears that this case is governed by the law of New Jersey (the state from which Westgate issued the subject letter of credit), it has not been suggested that there is any divergence between New York law and New Jersey law on any of the issues raised by this appeal.

tioned statement in the transmittal correspondence ("If you should require any additional documentation or information, please do not hesitate to contact us").[2] Our answer to this question is dictated by the strict compliance rule, under which the beneficiary of a letter of credit cannot compel the issuer to pay—indeed, the issuer is obligated to the applicant *not* to pay—if the beneficiary's presentation fails to meet the precise specifications for a valid draw against the instrument. Thus, "[n]o substitution and no equivalent, through interpretation or logic, will serve," and "[t]here is no room for documents which are almost the same, or which will do just as well" (*United Commodities-Greece v Fidelity Intl. Bank*, 64 NY2d 449, 455 [1985] [citations and internal quotation marks omitted], *rearg denied* 65 NY2d 923 [1985]; *see also Beyene v Irving Trust Co.*, 762 F2d 4 [2d Cir 1985] [bill of lading's misspelling of the name of the person to be given notice of the goods' arrival was a material discrepancy from letter of credit]; *Chase Manhattan Bank v Equibank*, 550 F2d 882, 884-885 [3d Cir 1977] [beneficiary's letters to issuer referring to applicant's breaches of underlying contract, but not stating that applicant was in "default," did not constitute certification of default as required by letter of credit]; *Bounty Trading Corp. v S.E.K. Sportswear*, 48 AD2d 811 [1975] [presentation of a collection letter did not comply with letter of credit that required presentation of a sight draft]).

In this case, the requirement of a "written demand . . . for payment" means just that—a writing literally requesting that payment be made. No such request for payment can be found anywhere within Doumak's correspondence of June 30, 2000, which stated only that Westgate should "not hesitate to contact us" for any additional desired "documentation or information." At best for Doumak, these statements could be interpreted—arguably—as implicitly reflecting a desire by Doumak that Westgate make payment upon receipt of the documents. The statements are, however, susceptible to an alternative interpretation, namely, that Doumak wished to confirm that the submitted documents were sufficient so that Doumak would be able to draw on the letter of credit by submitting a demand for payment at a later time, perhaps in the event of a default by

---

2. Doumak does not argue that it is entitled to payment by virtue of the untimely September 7 demand.

Michaels.[3] In any event, since a beneficiary's presentation is judged by the standard of "[l]iteral compliance" with the terms of the letter of credit (*Beyene v Irving Trust Co.*, 762 F2d at 6), the "do not hesitate" statement in Doumak's June 30 correspondence cannot pass muster as the "written demand . . . for payment" required by the subject instrument.

Doumak further argues that, even if the foregoing is granted, Westgate is precluded from raising the absence of a timely written demand by reason of Westgate's failure, upon receipt of the June 30 correspondence, to notify Doumak of the need for such a written demand. Although the IAS court appears to have accepted this argument, we reject it. No preclusion can be deemed to arise from Westgate's inaction, since, in the absence of any demand for payment, the June 30 correspondence cannot be deemed to have constituted a presentation triggering an obligation on Westgate's part to notify Doumak of discrepancies within a reasonable time (*see* NJ Rev Stat § 12A:5-108 [b] [3]; UCC 5-108 [b] [3]). An issuer is not a mind reader, and, where the letter of credit requires an express demand for payment, the issuer should not be required to assume that the submission of other required documents without such a demand is a faulty attempt to draw on the instrument. To impose such an obligation on the issuer would essentially read out of existence any written demand requirement that may be set forth in a letter of credit.[4]

While Doumak's June 30 correspondence did ask Westgate if any further "documentation or information" were needed, such a request could not, in the absence of a demand for payment, constitute a presentation triggering Westgate's duty to examine the documents and advise of discrepancies. Further, given that the letter of credit's requirement of a written demand for payment is obvious and nontechnical, Doumak could not have

---

**3.** In this regard, it should be noted that "standby" letters of credit now commonly function as guarantees of payment in the event of the applicant's default (*see Nissho Iwai Europe v Korea First Bank*, 99 NY2d at 119-120; *New Jersey Bank v Palladino*, 77 NJ 33, 41-42, 389 A2d 454, 458-459 [1978]). Although the letter of credit in this case does not require certification of Michaels' default as a condition to payment, the parties may well have intended it to fulfill the function of a guarantee. The parties' use of the label "Guaranty" obviously would have been consistent with such intent.

**4.** Readily distinguishable is the situation in which an *express* attempt to draw on a letter of credit is discrepant in some respect. Under such circumstances, the issuer, knowing that the beneficiary intended to draw on the instrument, is obligated to advise the beneficiary of any discrepancies within a reasonable time so that they may, if possible, be cured (*see e.g. Alaska Textile Co., Inc. v Chase Manhattan Bank, N.A.*, 982 F2d 813, 816 [1992]).

justifiably relied on Westgate's silence as an indication that no written demand was required. Accordingly, Westgate's silence cannot be deemed to give rise to any estoppel (*see United Commodities-Greece v Fidelity Intl. Bank*, 64 NY2d at 457 [no estoppel in the absence of detrimental reliance]; *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184 [1982] [reliance must be justifiable in order to support application of doctrine of estoppel]).

In closing, we observe that, if Doumak had intended its correspondence of June 30 to constitute a draw on the letter of credit, it had nearly two months prior to the instrument's expiration in which to ask Westgate why no payment or other response to the June 30 correspondence had yet been received. It is undisputed that Doumak made no such inquiry during this period, and instead waited to contact Westgate until more than two weeks had passed since the letter of credit expired. This long period of inaction in the absence of any response to the June 30 correspondence underscores Doumak's complete lack of justification for any reliance it placed on Westgate's silence. We see no reason for this Court to rescue a party such as Doumak—a business firm presumably capable of complying with legal documents of the sort routinely used in commerce—from the consequences of such carelessness. Neither do we see any justification for departing from the strict compliance rule in order to vitiate a condition to payment under a letter of credit, particularly a condition so clearly stated, and so easily satisfied, as the subject instrument's requirement that the beneficiary make a "written demand . . . for payment" by a specified date.

Finally, we note that, because Doumak's failure to serve a timely written demand is dispositive of the case, we need not reach Westgate's alternative argument, discussed by the dissent, concerning a certificate of inspection requirement.

Accordingly, the judgment of the Supreme Court, New York County (Helen Freedman, J.), entered December 4, 2001, which awarded plaintiff recovery in the amount of $24,510, plus interest, costs and disbursements, should be reversed, on the law, without costs, plaintiff's cross motion for summary judgment denied, and defendant's motion for summary judgment dismissing the complaint granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint. Appeal from order, same court and Justice, entered December 3, 2001, should be dismissed, without costs, as subsumed in the appeal from the judgment.

ANDRIAS, J. (dissenting). I respectfully dissent and would affirm the grant of summary judgment to plaintiff.

We all agree, contrary to defendant's assertion, that the agreement at issue, although denominated a guaranty, is a letter of credit because no extrinsic evidence is necessary to determine the parties' obligations and by its very terms, defendant was primarily responsible for payment, which was to be made upon presentation of the contractually prescribed documentation, regardless of whether the underlying transaction had been satisfactorily performed (*see New Jersey Bank v Palladino*, 77 NJ 33, 52, 389 A2d 454, 464 [1978] [dissenting op]).

In light of defendant's failure for more than three months to notify plaintiff of its rejection of the documentation proffered by plaintiff in support of its request for payment, defendant may not avoid liability under the agreement by claiming that plaintiff failed to make timely written demand for payment or that the demand was otherwise not in accordance with the agreement (*see Alaska Textile Co., Inc. v Chase Manhattan Bank, N.A.*, 982 F2d 813, 816 [1992]).

In any event, insofar as defendant failed to allege with particularity plaintiff's noncompliance with the certificate of inspection condition precedent to payment under the subject agreement and failed to interpose any affirmative defenses to that effect, the certificate of inspection condition precedent defense was waived (*see City of New York v Delafield 246 Corp.*, 236 AD2d 11, 22, *resettled in part* 244 AD2d 272 [1997], *lv denied* 91 NY2d 811 [1998]). Although defendant's answer did raise the issue of plaintiff's alleged failure to comply with the condition precedent of timely written demand for payment, the evidence as a whole establishes that such condition was satisfied.

BUCKLEY, P.J., and ROSENBERGER, J., concur with FRIEDMAN, J.; NARDELLI and ANDRIAS, JJ., dissent in a separate opinion by ANDRIAS, J.

Judgment, Supreme Court, New York County, entered December 4, 2001, reversed, on the law, without costs, plaintiff's cross motion for summary judgment denied, and defendant's motion for summary judgment dismissing the complaint granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint. Appeal from order, same court, entered December 3, 2001, dismissed, without costs, as subsumed in the appeal from the judgment.