OPINION OF THE COURT
Andrias, J.
Plaintiffs are the beneficiaries of irrevocable standby letters of credit (SLCs) issued by defendant CFP Services Ltd. doing business as CFP Trade Services. The SLCs were issued in con *100 nection with an amended license agreement between plaintiffs, as licensors, defendant Kappa North America, Inc., as licensee, and defendant Total Apparel Group, Inc. (TAG), as Kappa’s guarantor. Although CFP allegedly issued the SLCs with the understanding that the amendment to the license agreement had already been signed, it was executed shortly after the SLCs were issued and was backdated.
After Kappa and TAG defaulted in their obligations under the amended license agreement, CFP refused to honor plaintiffs’ demands for payment due to alleged discrepancies between certain documents required by the SLCs and those submitted by plaintiffs. These included the alleged failure of plaintiffs to submit, pursuant to requirement E of the SLCs, an authenticated Society for Worldwide Interbank Financial Telecommunication (SWIFT) message from CFP confirming plaintiffs’ “fulfilment of their commitment towards the account party.”
Supreme Court denied plaintiffs’ motion for summary judgment on their breach of contract claim against CFP on the grounds that the backdating of the amendment to the license agreement was arguably a material misrepresentation and that plaintiffs had not established, as a matter of law, compliance with requirement E. We now hold that plaintiffs are entitled to payment under the SLCs and that their motion for summary judgment should have been granted.
Analysis of the parties’ claims requires a brief history of the events leading up to the issuance of the SLCs. By agreement dated April 24, 2009, plaintiffs granted Kappa the exclusive right to use certain of their trademarks used on sportswear apparel in the United States and Canada for a specified term. TAG, which owned Kappa, signed the agreement as Kappa’s guarantor.
By June 2010, Kappa had allegedly defaulted in its obligations under the license agreement to pay minimum guaranteed royalty payments and to deliver a bank guaranty to plaintiffs. TAG defaulted on its guaranty. Consequently, plaintiffs served Kappa and TAG with default and termination notices. However, to avoid termination of the licensing agreement, in or about September 2010, plaintiffs, Kappa and TAG began negotiating an amendment to the agreement under which Kappa’s and TAG’s monetary obligations to plaintiffs would be extended and reduced, and Kappa and TAG would obtain SLCs for the benefit of plaintiffs in lieu of a bank guaranty. The purpose of the SLCs was to insure that plaintiffs had a guaranteed, easily accessible *101 recourse to funds in the event of another breach by Kappa and TAG.
Kappa applied to CFP for the SLCs. CFP provided Kappa with drafts of the SLCs, which Kappa gave to plaintiffs for review. Several of these drafts contained a clause that gave CFP the discretion to determine whether plaintiffs fulfilled their commitment to Kappa (the control clause). When plaintiffs objected to the inclusion of the control clause, Kappa advised them that it would be omitted from the SLCs. Kappa then provided plaintiffs with draft SLCs that did not include the clause, which plaintiffs approved. However, CFP asserts that it did not agree to this and that it advised Kappa that it was unwilling to issue the SLCs without the control clause unless Kappa and TAG put up a 100% margin to protect CFP in the event of Kappa’s default.
On or about October 6, 2010, CFP issued two SLCs, one in favor of plaintiff BasicNet in the amount of $106,344 (SLC 765) and the other in favor of plaintiff Basic Properties in the amount of $519,424 (SLC 769). Each SLC stated “WE HEREBY ISSUE OUR IRREVOCABLE STANDBY LETTER OF CREDIT” and included the following five presentation requirements:
“A) A SIGNED LETTER OF CLAIM FROM THE BENEFICIARY ADDRESSED TO THE ISSUER CFP . . . FOR THE CLAIM AMOUNT UNDER STANDBY LETTER OF CREDIT ISSUED BY THEM IN ONE ORIGINAL AND TWO COPIES.
“B) A WRITTEN SIGNED STATEMENT FROM BENEFICIARY STATING THAT THEY HAVE DISCHARGED ALL THEIR OBLIGATIONS TOWARDS THE APPLICANT AND APPLICANT HAS FAILED TO DISCHARGE ITS OBLIGATIONS AS PER THE TERMS OF THE UNDERLYING CONTRACT AND THIS SLC IN ONE ORIGINAL AND TWO COPIES.
“Q A SIGNED LETTER OF DEFAULT NOTICE FROM . . . THE BENEFICIARY TO APPLICANT KAPPA . . . WITH A TEN BUSINESS DAY CURE PERIOD PROVISION CALLING FOR THE AMOUNT OF PAYMENT DUE AS PER THE CONTRACT SENT VIA FEDEX OR DHL SUPPORTED BY PROOF OF DELIVERY OF THIS DEFAULT NOTICE TO KAPPA ... AT 525 SEVENTH AVE *102 NUE SUITE 501 NEW YORK, NY 10018 ISSUED BY FEDEX/DHL OR FEDEX/DHL WRITTEN CONFIRMATION EVIDENCING INABILITY TO DELIVER FOR ANY REASON WHATSOEVER.
“D) AN AUDITED PAYMENT STATEMENT ISSUED AND SIGNED BY J.P LALL, EC. . . . CERTIFYING THAT . . . KAPPA . . . HAS DEFAULTED ON ITS MINIMUM ROYALTY PAYMENTS DUE TO [BENEFICIARY] IN A SPECIFIC AMOUNT NOT TO EXCEED THE AMOUNT STATED IN THE DEFAULT NOTICE AS PER (C) ABOVE WITHIN THE VALUE OF THIS SLC AND THAT KAPPA . . . FAILED TO MAKE THE PAYMENT TO CURE THE DEFAULT DURING THE CURE PERIOD AS PER DEFAULT NOTICE SENT TO KAPPA.
“E) AUTHENTICATED SWIFT MSG FROM CFNYUS33 [CFP] TO BENEFICIARY’S BANK CONFIRMING BENEFICIARY’S FULFILMENT OF THEIR COMMITMENT TOWARDS THE ACCOUNT PARTY AND THAT WE ARE IN FUNDS.”
The SLCs provided that they were to be valid for one year and that all claims under the SLCs were to be submitted “ONLY AFTER 345 DAYS AFTER THE DATE OF ISSUANCE.” Each SLC also stated, “THIS [SLC] IS OPENED ON THE ACCOUNT OF KAPPA . . . AND THE BENEFICIARY AS PER AMENDED AND RESTATED LICENSE AGREEMENT DATED 9/28/10 FOR ROYALTY AND COMMISSION AND IS SUBJECT TO STRUCTURED TERMS AND CONDITIONS ASSOCIATED WITH THIS SLC,” and “WE HEREBY ENGAGE WITH THE DRAWER THAT THE DRAFT DRAWN IN COMPLIANCE WITH THE TERMS OF THIS [SLC] WILL BE DULY HONOURED BY US UPON PRESENTATION DULY COMPLIED WITH THE TERMS AND CONDITIONS STATED IN THIS [SLC].”
Although the SLCs were issued on or about October 6, 2010, the amended licence agreement was not signed until on or about October 14, 2010, at which time plaintiffs, Kappa and TAG backdated it to September 28, 2010. Also, on or about that day, requirement E of the SLCs was amended to delete the phrase “AND THAT WE ARE IN FUNDS.”
Plaintiffs acknowledge that they were aware of the inclusion of requirement E in the SLCs when they executed the amend *103 ment to the license agreement, but maintain that after Kappa advised them that it would be too time-consuming to delete the clause, the following language was inserted into the amendment in paragraph (2) to address their concerns:
“Therefore the Company [Kappa] undertakes to have the issuing bank [CFP] issue a swift message to [BasicNet (BN)] and [Basic Properties America’s (BPA)] advising bank confirming as per ‘REQUIREMENT E’ beneficiary’s fulfilment of their commitment towards the account party and to provide BN and BPA with a copy of the relevant swift messages as soon as possible, and in any case not later than on 21 October 2010. Being receipt of such swift messages a condition precedent to the entering into force of this Amendment, it is expressly agreed that in case the BasicNet Group does not receive such swift messages for each of the standby letter of credit before 21 October 2010, this Amendment will be automatically null and void with no need for any formality nor for any notice.”
On or about November 6, 2010, CFP sent a SWIFT message to plaintiffs’ bank confirming its receipt of the fully executed agreement. As discussed below, a major issue in the resolution of this appeal is whether this SWIFT message satisfied requirement E.
On July 1, 2011, Kappa and TAG executed a waiver and release agreement in which they acknowledged that they were “in significant and material default under the terms of the [amended licensing agreement].” On September 29, 2011, plaintiff made separate draw demands on SLC 765 and SLC 769 seeking full payment from CFP Plaintiffs assert that in their presentation for each SLC they satisfied requirement A by submitting one original and two copies of a written signed statement addressed to CFP for the claim amount under the SLC; requirement B by submitting one original and two signed copies of a statement signed by plaintiffs stating that plaintiffs had discharged all of their obligations to Kappa and that Kappa had failed to satisfy its obligations under the amended licensing agreement; requirement C by submitting a signed letter from plaintiffs to Kappa providing a notice of default with a 10-day cure period and calling for the amount due under the amended licensing agreement, sent via FedEx to the address designated in the SLCs, together with proof of inability to deliver from FedEx; *104 requirement D by submitting an audited payment statement from the accountant designated in the SLCs certifying that Kappa had defaulted on its minimum royalty payments in an amount that did not exceed the amount in the default notice submitted per requirement C, and that Kappa failed to cure the default during the cure period; and requirement E by submitting the November 6, 2010 SWIFT message from CFP confirming its receipt of the fully executed amended licensing agreement.
On October 6, 2011, CFP refused to honor the demands on the grounds that (i) both demands were discrepant for failure to produce the SWIFT message from CFP confirming plaintiffs’ fulfillment of their commitments towards Kappa as per requirement E; (ii) both demands were discrepant for failure to comport with requirement B in that the signed statements submitted thereunder said “and of SLC [relevant number],” instead of “and this SLC”; and (iii) the demand relating to SLC 769 was discrepant for failure to comport with requirement D because FedEx’s letter stating that it had been unable to deliver Basic Properties’s notice of default to Kappa was addressed to Basic-Net instead of Basic Properties. As to plaintiffs’ contention that they had satisfied requirement E by submitting the November 6, 2010 SWIFT message in which CFP confirmed its receipt of the amended licensing agreement, on December 8, 2011, CFP sent a SWIFT message to plaintiffs’ advising bank stating that
“THIS REFERS TO YOUR MSG [message] DT [dated] 5TH AUGUST 2011 REG[arding] OUR ABOVE SLC, PLS [please] NOTE THAT OUR MT 799 REFERRED TO BY YOU IN YOUR MSG [message] IS NOT THE SWIFT MSG [message] REQUIRED AS PER POINT (E) of our SLC. WE CONTACTED THE ACCOUNT PARTY AND THEY HAVE INFORMED US THAT THERE IS A DISPUTE BETWEEN THEM AND THE BENEFICIARY AND BENE[ficiary] HAS NOT FULFILLED THEIR COMMITMENT TOWARDS THE ACCOUNT PARTY. IN VIEW OF THIS WE ARE NOT IN A POSITION TO SEND ANY SUCH SWIFT MSG [message] AS OF NOW”
Asserting that Kappa and TAG acknowledged their material default in the July 1, 2011 release and waiver agreement and that their payment demand to CFP satisfied all five documentary requirements of the SLCs, plaintiffs seek to recover the full *105 amount of the SLCs from CFP under a breach of contract theory. CFP answered, and asserted affirmative defenses and counterclaims, including misrepresentation and fraud based on the backdating of the amended license agreement.
A SLC assures the performance of an obligation, enabling the beneficiary to make a demand for payment under the SLC upon the occurrence of certain events, such as the default of the other party in the underlying transaction (see Mennen v J.P. Morgan & Co., 91 NY2d 13, 19-20 [1997]; One Step Up, Ltd. v Webster Bus. Credit Corp., 87 AD3d 1 [1st Dept 2011]). Like commercial letters of credit, they are “documentary,” in that the default or nonoccurrence of an event is predicated on one or more prescribed documents, as set forth in the SLC itself.
We first consider whether plaintiffs’ presentation complied with requirement E. Plaintiffs contend that, pursuant to paragraph (2) of the amendment to the licence agreement, their only commitment to Kappa as per requirement E was to execute the amendment, and that requirement E was satisfied when, on November 6, 2010, CFP sent a SWIFT message to plaintiffs’ bank confirming its receipt of the fully executed agreement. CFP disputes this, and contends that pursuant to requirement E it was to be the sole arbiter of plaintiffs’ fulfillment of their commitment towards Kappa under the amended licensing agreement.
Under New York law, in order to recover on its claim that the issuer wrongfully refused to honor its request to draw down on a letter of credit, the beneficiary must prove that it strictly complied with the terms of the letter of credit (see United Commodities-Greece v Fidelity Intl. Bank, 64 NY2d 449 [1985]; see also Marino Indus. Corp. v Chase Manhattan Bank, N.A., 686 F2d 112 [2d Cir 1982]). “The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit, and that all ambiguities are construed against the [issuer]” (Marino, 686 F2d at 115 [internal quotations marks and citation omitted]; see also Nissho Iwai Europe v Korea First Bank, 99 NY2d 115, 121-122 [2002]; Barclay Knitwear Co. v King’swear Enters., 141 AD2d 241, 246-247 [1st Dept 1988], lv denied 74 NY2d 605 [1989]). The reasoning is that “[s]ince the beneficiary must comply strictly with the requirements of the letter, it must know precisely and unequivocally what those requirements are” (Marino, 686 F2d at 115).
“Where a letter of credit is fairly susceptible of two constructions, one of which makes it fair, customary *106 and one which prudent men would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter, and a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless” (Venizelos, S. A. v Chase Manhattan Bank, 425 F2d 461, 466 [2d Cir 1970]).
Requirement E is ambiguous. It obligates plaintiffs to submit an authenticated SWIFT message from CFP confirming their “FULFILMENT OF THEIR COMMITMENT TOWARDS THE ACCOUNT PARTY.” However, the term “commitment,” singular, is not defined, and the clause makes no reference to the amended license agreement. In contrast, requirement B requires “A WRITTEN SIGNED STATEMENT FROM BENEFICIARY STATING THAT THEY HAVE DISCHARGED ALL THEIR OBLIGATIONS TOWARDS THE APPLICANT AND APPLICANT HAS FAILED TO DISCHARGE ITS OBLIGATIONS AS PER THE TERMS OF THE UNDERLYING CONTRACT AND THIS SLC” (emphasis added). Requirement C requires a “A SIGNED LETTER OF DEFAULT NOTICE FROM . . . THE BENEFICIARY TO APPLICANT KAPPA . . . WITH A TEN BUSINESS DAY CURE PERIOD PROVISION CALLING FOR THE AMOUNT OF PAYMENT DUE AS PER THE CONTRACT” (emphasis added).
Construing this ambiguity as to what “commitment” requirement E refers to, and therefore what document was required to satisfy it, in plaintiffs’ favor, we find that plaintiffs’ interpretation of requirement E is the only reasonable and legally cognizable interpretation of the provision before the Court. The purpose of the amended license agreement was to restructure the debt owed and payable to plaintiffs as a result of Kappa’s and TAG’s default under the original licensing agreement, and plaintiffs fulfilled their commitment to Kappa and TAG to do so when they executed the amendment. When CFP issued the SWIFT message acknowledging receipt of the fully executed amended agreement, requirement E was satisfied. This is consistent with the terms of paragraph (2) of the amendment to the licensing agreement in which Kappa undertook to have CFP issue a SWIFT message “confirming as per ‘REQUIREMENT E’ beneficiary’s fulfilment of their commitment towards the account party and to provide [plaintiffs’ bank] with a copy of the relevant swift messages as soon as possible, and in any case not later than on 21 October 2010.”
*107 Furthermore, CFP’s interpretation of requirement E would impermissibly conflict with the independence principle, which is the foundation on which all letters of credit are built.
There are three parties to an SLC: the applicant who requests the SLC; the beneficiary to whom payment is due upon the presentation of the documents required by the SLC; and the issuer which obligates itself to honor the SLC and make payment when presented with the documents the SLC requires. In turn, there are three corresponding agreements: the agreement between the applicant and the beneficiary, which creates the basis for the SLC; the agreement between the issuer and the applicant; and the SLC itself (see Nissho, 99 NY2d at 120).
“[A] fundamental principle governing these transactions is the doctrine of independent contracts [,] [which] provides that the issuing bank’s obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the . . . contract and separate as well from any obligation of the issuer to its customer under their agreement” (First Commercial Bank v Gotham Originals, 64 NY2d 287, 294 [1985]).
From the beneficiary’s perspective, the independence principle makes a letter of credit superior to a normal surety bond or guaranty because the issuer is primarily liable and is precluded from asserting defenses that an ordinary guarantor could assert. Indeed, “a letter of credit would lose its commercial vitality if before honoring drafts the issuer could look beyond the terms of the credit to the underlying contractual controversy or performance between its customer and the beneficiary” (Township of Burlington v Apple Bank for Sav.,1995 WL 384442, *5, 1995 US Dist LEXIS 8878, *14 [SD NY, June 28, 1995, No. 94 Civ 6116 (JFK)]; see also Voest-Alpine Intl. Corp. v Chase Manhattan Bank, N.A., 707 F2d 680, 682-683 [2d Cir 1983]).
SLC 765 and SLC 769 each specify that “THIS LETTER OF CREDIT IS SUBJECT TO ISP [International Standby Practices] 98 ICC [International Chamber of Commerce] NO. 590 AND THE LAWS OF THE UNITED STATES OF AMERICA. PLACE OF JURISDICTION NEW YORK.” Pursuant to New York Uniform Commercial Code § 5-116 (a), “[t]he liability of an issuer ... is governed by the law of the jurisdiction” designated by the SLC. Pursuant to UCC 5-116 (c), if an SLC governed by UCC article 5 incorporates “any rules of custom or *108 practice,” such as ISP 98 (Institute of International Banking Law and Practice, Inc., International Standby Practices ISP 98 [1998]), and if there is conflict between article 5 and those rules, then the rules govern “except to the extent of any conflict with the nonvariable provisions specified in subsection (c) of section 5-103.”
Both ISP 98 and article 5 of the UCC recognize that the issuer’s obligation to honor an SLC is independent of the rights and liabilities of the parties to the underlying contract. Rule 1.06 (c) of ISP 98 states:
“Because a standby is independent, the enforceability of an issuer’s obligations under a standby does not depend on:
“(i) the issuer’s right or ability to obtain reimbursement from the applicant;
“(ii) the beneficiary’s right to obtain payment from the applicant;
“(in) a reference in the standby to any reimbursement agreement or underlying transaction; or
“(iv) the issuer’s knowledge of performance or breach of any reimbursement agreement or underlying transaction.”
Rule 1.07 of ISP 98, titled “Independence of the issuer-beneficiary relationship,” states that “[a]n issuer’s obligations toward the beneficiary are not affected by the issuer’s rights and obligations toward the applicant under any applicable agreement, practice, or law.”
In November 2000, the independence principle was codified in a general revision of article 5 of the UCC. UCC 5-103 (d) now provides that
“[r]ights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.”
The doctrine of independent contracts, as codified in UCC article 5, allows the letter of credit to provide “ ‘a quick, eco *109 nomic and trustworthy means of financing transactions for parties not willing to deal on open accounts’ ” (Mennen, 91 NY2d at 21, quoting All Serv. Exportacao, Importacao Comercio, S.A. v Banco Bamerindus Do Brazil, S.A., N.Y. Branch, 921 F2d 32, 36 [2d Cir 1990]). “Only staunch recognition of this principle by the issuers and the courts will give letters of credit the continuing vitality that arises from the certainty and speed of payment under letters of credit” (Official Comment, reprinted in McKinney’s Cons Laws of NY, Book 62½, UCC 5-103 at 346).
As interpreted by CFI] requirement E would conflict with the independence principle, as incorporated into both ISP 98 and the UCC, and would make CFP’s obligations under the SLCs truly illusory. Rather than performing a ministerial function of determining whether the documents submitted by plaintiffs complied with the requirements of the SLCs, under CFP’s interpretation of requirement E, CFP has the unfettered discretion to decide whether or not it will pay on the SLCs based on its unilateral determination that plaintiffs did or did not fulfill their undefined “commitment” to Kappa.
CFP asserts that its interpretation of requirement E is nonetheless enforceable and must be strictly construed because the rules of ISP 98 may be varied by the terms of the SLCs (ISP 98 rule 1.01 [c]), and plaintiffs accepted the SLCs with requirement E. CFP reasons that the definition of “document” in ISP 98 encompasses a “representation of fact, law, right, or opinion” (ISP 98 rule 1.09 [a]), and that it had the right to express its “opinion” as to whether plaintiffs had fulfilled their commitment towards Kappa. We disagree.
Rule 1.01 (c) of ISP 98 states that “[a]n undertaking subject to these Rules may expressly modify or exclude their application.” Rule 1.04 states that “[u]nless the context otherwise requires, or unless expressly modified or excluded, these Rules apply as terms and conditions incorporated into a standby.” Rule 1.11 (d) (iii) states, “[a]ddition of the term ‘expressly’ . . . to the phrase ‘unless a standby otherwise states’ or the like emphasizes that the rule should be excluded or modified only by wording in the standby that is specific and unambiguous.” Here, the SLCs do not expressly modify or exclude the application of rules 1.06 (c) and 1.07 of ISP 98. Moreover, the UCC, which would govern in the event of a conflict (see UCC 5-116 [c]), *110 provides that the independence principle is mandatory and may not be varied by agreement (UCC 5-103 [c]).*
Even assuming, arguendo, that CFP’s interpretation of requirement E is correct and that the parties could contract out of such a fundamental principle, CFP would be estopped from enforcing requirement E based on the improper communications it had with Kappa relating to dishonoring the SLCs (see E & H Partners v Broadway Natl. Bank, 39 F Supp 2d 275, 284-285 [SD NY 1998]). To evaluate plaintiffs’ presentations, CFP spoke to officers of Kappa and considered Kappa’s written notices of the dispute between itself and plaintiffs and its objections to payment of plaintiffs’ claims. While CFP asserts that its discussions with Kappa related to whether the alleged discrepancies in plaintiffs’ presentations should be waived, CFP’s answer to interrogatories confirms that its discussions with Kappa predate plaintiffs’ demands for payment, including “letters to [CFP], dated August 10, 2011 . . . [and] September 1, 2011 . . . , wherein [Kappa] clearly notified [CFP] of a dispute between [Kappa] and TAG and [plaintiffs] concerning the underlying Contract between those parties and the amounts due on [plaintiffs’] claim.” “[T]o permit the payor to pressure or collude with the bank to dishonor the draft destroys the very principle upon which the commercial utility of letters of credit rests” (E & H Partners, 39 F Supp 2d at 285). In this regard, as a further indication of collusion, we note that according to the amended complaint, unbeknownst to plaintiffs, on October 14, 2010, Kappa, at CFP’s request, provided a notarized letter to CFI] stating:
“We agree that these standby letters of Credit will have the following documentary requirement as a ‘special clausef].
“AUTHENTICATED SWIFT MSG FROM CNFUS33 TO BENEFICIARY’S BANK CONFIRMING BENEFICIARY’S FULFILLMENT OF THEIR COMMITMENT TOWARDS THE ACCOUNT PARTY
*111 “We agree that you shall have no obligation whatsoever to send the Swift Message or issue any amendments.”
CFP is not excused from making payment because the amendment to the license agreement was backdated. The fraud exception has been codified in the UCC, which provides that an issuing bank may refuse to honor documents that “appear[ ] on [their] face strictly to comply with the terms and conditions of the letter of credit” but are “forged or materially fraudulent,” or if “honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant” (UCC 5-109 [a]). However, because the smooth operation of international commerce requires that requests for payment under letters of credit not be routinely obstructed by prepayment litigation, the fraud exception to the independence principle “is a narrow one” that is only available on a showing of “intentional fraud” (All Serv. Exportacao, Importacao Comercio, S.A. v Banco Bamerindus Do Brazil, S.A., NY Branch, 921 F2d 32, 35 [2d Cir 1990]; see also First Commercial Bank, 64 NY2d at 295 [fraud is “(a) limited exception to this rule of independence”]; Banque Worms, N.Y. Branch v Banque Commerciale Privee, 679 F Supp 1173, 1182 [SD NY 1988], affd 849 F2d 787 [2d Cir 1988] [the fraud exception “is limited to situations in which the wrongdoing of the beneficiary has permeated the entire transaction”]).
The fact that plaintiffs signed the amended license agreement on or about October 14, 2010 instead of September 28, 2010 is not material to the terms of the SLCs, i.e., that plaintiffs submit signed letters of claim and audited payment statements from a licensed independent public accounting firm (see E & H Partners, 39 F Supp 2d at 286). There was a valid underlying transaction, and the backdating does not excuse CFP from paying on the SLCs (see Semetex Corp. v UBAF Arab Am. Bank, 853 F Supp 759, 775 [SD NY 1994], affd 51 F3d 13 [2d Cir 1995]).
We next consider whether plaintiffs satisfied requirements B and C of the SLCs. While CFP has not abandoned its assertion that plaintiffs’ presentation did not satisfy these requirements, the discrepancies invoked by CFP do not excuse it from paying on the SLCs.
Rule 4 of ISP 98 governs the duties and responsibilities an issuing bank must undertake when examining documents. Rule 4.01 (b) states that “[w]hether a presentation appears to comply is determined by examining the presentation on its face against the terms and conditions stated in the standby as interpreted *112 and supplemented by these Rules which are to be read in the context of standard standby practice.” Rule 4.09 states:
“If a standby requires:
“(a) a statement without specifying precise wording, then the wording in the document presented by must appear to convey the same meaning as that required by the standby;
“(b) specified wording by the use of quotation marks, blocked wording, or an attached exhibit or form, the typographical errors in spelling, punctuation, spacing, or the like that are apparent when read in context are not required to be duplicated and blank lines or spaces for data may be completed in any manner not inconsistent with the standby; or
“(c) specified wording by the use of quotation marks, blocked wording, or an attached exhibit or form, and also provides that the specified wording be ‘exact’ or ‘identical’, then the wording in the documents presented must duplicate the specified wording, including typographical errors in spelling, punctuation, spacing and the like, as well as blank lines and spaces for data must be exactly reproduced.”
According to the official UCC commentary, the strict compliance standard does not require that the documents presented by the beneficiary be exact in every detail (Official Comment, reprinted in McKinney’s Cons Laws of NY, Book 62V2, UCC 5-108 at 367) [“Strict compliance does not mean slavish conformity to the terms of the letter of credit . . . (and) does not demand oppressive perfectionism”]).
The documents provided by plaintiffs contained the information specified in requirements B and C. Requirement B calls for a written signed statement from the beneficiary (plaintiffs) stating that the applicant (Kappa) “FAILED TO DISCHARGE ITS OBLIGATIONS AS PER THE TERMS OF THE UNDERLYING CONTRACT [THE LICENSE AGREEMENT] AND THIS SLC.” Plaintiffs submitted written signed statements stating that Kappa “failed to discharge its obligations as per the terms of the License Agreement . . . and of SLC [relevant number].” There is no possibility that the difference between “this SLC” and “SLC [relevant number]” “could mislead [CFP] to its detriment” (see E & H Partners, 39 F Supp 2d at 283-284; Bank of *113 Cochin Ltd. v Manufacturers Hanover Trust Co., 612 F Supp 1533, 1541 [SD NY 1985], affd 808 F2d 209 [2d Cir 1986]).
Requirement C called for “A SIGNED LETTER OF DEFAULT NOTICE FROM . . . THE BENEFICIARY TO . . . KAPPA . . . SENT VIA FEDEX OR DHL SUPPORTED BY PROOF OF DELIVERY . . . ISSUED BY FEDEX/DHL OR FEDEX/DHL WRITTEN CONFIRMATION EVIDENCING INABILITY TO DELIVER.” Plaintiffs submitted signed letters of default notice to Kappa, sent via FedEx, and written confirmations from FedEx evidencing inability to deliver. CFP is refusing to pay on the SLC with Basic Properties as beneficiary because — instead of one FedEx confirmation being addressed to BasicNet and the other being addressed to Basic Properties — they are both addressed to BasicNet. However, both of FedEx’s notices say that Kappa moved. Thus, regardless of who sent the package (BasicNet or Basic Properties), Kappa would not have received it. Thus, the fact that both FedEx confirmations were addressed to BasicNet is a “nonmeaningful” error (see Ocean Rig ASA v Safra Natl. Bank of N.Y., 72 F Supp 2d 193, 199 [SD NY 1999]).
Accordingly, the order of the Supreme Court, New York County (Lawrence K. Marks, J.), entered on or about October 30, 2013, which denied plaintiffs’ motion for summary judgment on their breach of contract claim against defendant CFR should be reversed, on the law, and the motion granted, without costs.
Tom, J.P, Acosta, DeGrasse and Richter, JJ., concur.
Order, Supreme Court, New York County, entered on or about October 30, 2013, reversed, on the law, without costs, and the motion granted.

 Section 5-103 states:
“With the exception of this subsection, subsections (a) and (d) of this section [the independence principle], . . . the effect of this article may be varied by agreement or by a provision stated or incorporated by reference in an undertaking. A term in an agreement or undertaking generally excusing liability or generally limiting remedies for failure to perform obligations is not sufficient to vary obligations prescribed by this article.”