[6 NYS3d 33]

LADENBURG THALMANN & CO. INC., Respondent, v SIGNATURE BANK, Appellant.

First Department, March 19, 2015

**APPEARANCES OF COUNSEL**

*Robert M. Rosenblith*, Tarrytown, for appellant.

*Philip S. Ross P.C.*, New York City (*Philip S. Ross* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.

This case presents the issue of whether a letter of credit that requires the originals of all documents to trigger payment can be satisfied by a true copy of one of the original amendments to the letter of credit.

Background

Defendant, Signature Bank, issued an irrevocable transferable standby letter of credit in the amount of $833,000 upon the application of nonparty law firm Arkin Kaplan LLP, for the

benefit of plaintiff, Ladenburg Thalman Co. Inc. The letter of credit was issued as security for plaintiff, as sublandlord, to ensure payment by Arkin Kaplan, its subtenant, of rent and additional rent under their sublease.

Defendant bank's obligation to pay under the letter of credit was conditioned on defendant's receiving from plaintiff a presentation of documents including a drawing statement, "the original of this standby letter of credit, and all amendments, if any, and the operative notice." The letter of credit was amended six times.

On April 10, 2013, after Arkin Kaplan defaulted in paying a portion of the rent and additional rent, plaintiff made a written demand under the letter of credit for an initial drawdown of $39,920.88. Plaintiff included in its presentation the original letter of credit, a "sight draft," and original amendments 1, 4, 5, and 6. It had been unable to locate amendments 2 and 3.

By letter dated April 15, 2013, defendant dishonored the demand, citing as a defect in the presentation plaintiff's failure to present the original amendments 2 and 3. Thereafter, plaintiff's counsel requested true copies of those items from defendant's counsel. On May 7, 2013, in an email response to counsel's request, defense counsel provided plaintiff's attorney with true copies of the two requested amendments.[1]

Plaintiff then brought this action for (1) a declaration that defendant was required to honor the drawdown request and any future drawdown request without requiring it to provide the originals of amendments 2 and 3 to the letter of credit; and (2) breach of contract, based on defendant's failure to honor the initial drawdown request. The cause of action for breach of contract seeks damages in the amount of $39,920.88 together with interest commencing April 10, 2013.

Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, and for summary judgment pursuant to CPLR 3211 (c). Citing Uniform Commercial Code § 5-108 (a), defendant argued that it properly dishonored the presentation since the complaint on its face admitted plaintiff's failure to strictly comply with the requirements set forth in the letter of credit.

At oral argument on November 12, 2013, the court declined to dismiss the case. Rather, it agreed to an adjournment to

---

1. In the course of the litigation, in August 2013, plaintiff located the original of amendment 3; however, it continued to be unable to locate the original of amendment 2.

provide plaintiff with the opportunity to cure the defect in its first presentation. As part of its new presentation, plaintiff was instructed to present a copy of amendment 2, supported by an affidavit of the appropriate person certifying the source of the copy and that the copy had not been altered in any way.

The next day, November 13, 2013, as instructed by the court, plaintiff submitted a drawdown request in the amount of $406,058.80.[2] In this second presentation, plaintiff included the original letter of credit and all the original amendments in its possession, and a copy of amendment 2, with an affirmation of plaintiff's counsel regarding the source of the copy.

By letter dated November 25, 2013, defendant dishonored the demand.

On the adjourned date, December 5, 2013, the court denied defendant's motion to dismiss the complaint. Specifically, it held that plaintiff had substantially complied with the terms of the letter of credit. In so holding, the court reasoned that amendment 2 was no longer a material amendment, as it was undisputed that the missing original amendment had merely extended the expiration date of the letter of credit to August 31, 2010, and had since been superseded by amendment 3, which had extended the term of the letter of credit to August 31, 2011, and amendment 4, which further extended the term of the letter of credit to June 29, 2015. Therefore, it concluded that defendant's refusal to comply with the drawdown request on the sole basis that plaintiff had not provided defendant with the original of amendment 2 was arbitrary, entitling plaintiff to summary judgment.

Discussion

New York commercial law requires strict compliance with the terms of a letter of credit. UCC 5-108 (a) states that "an issuer shall honor a presentation that . . . appears on its face strictly to comply with the terms and conditions of the letter of credit."

It is true that the parties to the letter of credit can alter their legal responsibilities, such as Arkin Kaplan did here in paragraph 6 (a) of the application, authorizing defendant bank to accept documents that were in substantial compliance with the letter of credit under certain conditions. Supreme Court relied on this provision to conclude that Arkin Kaplan had

---

2. For the sake of clarity, we note that there is a $1,000 difference between this request and the amount awarded in the judgment.

waived strict compliance, and therefore that defendant had unreasonably exercised its discretion to reject documents on the ground that they were not in strict compliance. However, as defendant points out, that provision gave it discretion to demand strict compliance. The full provision reads:

> "6. Acceptable Documents Under the [Letter of] Credit.
>
> "(a) Substantial Compliance. Except as expressly provided otherwise on the Application, we authorize you and the issuer to accept as complying with the Credit any Drafts and/or Documents which are in substantial but not strict compliance with the Credit without affecting or relieving us of any of our Liabilities under this Agreement. *Nevertheless, the Issuer may in its discretion refuse to accept any or all such Drafts and/or Documents unless they are in strict compliance with the Credit*" (emphasis added).

From its language and structure, we conclude that paragraph 6 (a) must be understood to authorize but not require the bank to accept documents that are in substantial compliance, and to leave to the bank's discretion the decision whether to require strict compliance. The insertion of the word "Nevertheless" at the beginning of the second sentence modifies the first by empowering the bank to make the final call. Therefore, the bank's reliance on the strict compliance standard was proper, and it was error for the motion court to hold plaintiff to the lesser standard of substantial compliance.

However, even applying the standard of strict compliance, plaintiff's drawdown request should have been honored because, under these circumstances, the production of a true copy of amendment 2, instead of an original, was sufficient even to satisfy the strict compliance standard.

Strict compliance has been said to require that "the papers, documents and shipping directions . . . be followed as stated in the letter [of credit]," that "[n]o substitution and no equivalent, through interpretation or logic, will serve," and that "[t]here is no room for documents which are almost the same, or which will do just as well" (*United Commodities-Greece v Fidelity Intl. Bank*, 64 NY2d 449, 455 [1985] [internal quotations marks omitted]; *J.P. Doumak, Inc. v Westgate Fin. Corp.*, 4 AD3d 62, 65 [1st Dept 2004], *appeal dismissed* 3 NY3d 635

[2004]). Even slight discrepancies in compliance with the terms of a letter of credit have been held to justify refusal to pay (*see e.g. Hellenic Republic v Standard Chartered Bank*, 219 AD2d 498 [1st Dept 1995]).

"The [strict compliance] rule finds justification in the bank's role in the transaction being ministerial and to require it to determine the substantiality of discrepancies would be inconsistent with its function" (*United Commodities-Greece v Fidelity Intl. Bank*, 64 NY2d at 455 [citation omitted]). The "reason for the strict [compliance] rule is to protect the issuer from having to know the commercial impact of a discrepancy in the documents" (*E & H Partners v Broadway Natl. Bank*, 39 F Supp 2d 275, 284 [SD NY 1998] [internal quotation marks omitted]).

However, as this Court has recently observed, "According to the official UCC commentary, the strict compliance standard does not require that the documents presented by the beneficiary be exact in every detail" (*BasicNet S.p.A v CFP Servs. Ltd.*, 127 AD3d 157, 172 [1st Dept 2015]). The doctrine of strict compliance "does not mean slavish conformity to the terms of the letter of credit . . . [and] does not demand oppressive perfectionism" (127 AD3d 157, 172 quoting UCC 5-108, Comment 1).

In *BasicNet*, the defendant bank issued two standby letters of credit (SLCs), one with plaintiff BasicNet as beneficiary, the other with plaintiff Basic Properties as beneficiary, in connection with BasicNet's license to defendant Kappa North America, Inc., for which defendant Total Apparel Group, Inc. (TAG) was Kappa's guarantor. After Kappa and TAG defaulted on their obligations under the license agreement, the plaintiffs made drawdown demands on their letters of credit; the defendant bank refused to honor the demands, citing certain discrepancies in their presentation. Supreme Court denied the plaintiffs' motion for summary judgment. This Court reversed, holding that the plaintiffs had established, as a matter of law, their right to payment under the SLCs. While acknowledging that the standard of strict compliance was applicable, this Court explained that the discrepancies invoked by the bank were "nonmeaningful" (127 AD3d at 173 quoting *Ocean Rig ASA v Safra Natl. Bank of N.Y.*, 72 F Supp 2d 193, 199 [SD NY 1999]). That is, those discrepancies did not run the risk of "mislead-[ing] [the bank] to its detriment" (127 AD3d at 173 quoting *E & H*

*Partners*, 39 F Supp 2d at 283-284, and citing *Bank of Cochin Ltd. v Manufacturers Hanover Trust Co.*, 612 F Supp 1533, 1541 [SD NY 1985], *affd* 808 F2d 209 [2d Cir 1986]).

One of the "nonmeaningful" discrepancies in *BasicNet* arose from a condition of the letter of credit requiring a signed, written statement from the plaintiffs that the applicant (Kappa) had "FAILED TO DISCHARGE ITS OBLIGATIONS AS PER THE TERMS OF THE UNDERLYING CONTRACT [THE LICENSE AGREEMENT] AND THIS SLC." Plaintiffs' signed, written statements complied with this requirement except that, instead of the words "this SLC," they used the words, "SLC [relevant number]" (*BasicNet*, 127 AD3d at 168). This Court concluded that there was no possibility that the difference between "this SLC" and "SLC [relevant number]" could mislead the bank (127 AD3d at 168).

Another requirement of the letter of credit in *BasicNet* was

"A SIGNED LETTER OF DEFAULT NOTICE FROM . . . THE BENEFICIARY TO APPLICANT KAPPA . . . WITH A TEN BUSINESS DAY CURE PERIOD PROVISION CALLING FOR THE AMOUNT OF PAYMENT DUE AS PER THE CONTRACT SENT VIA FEDEX OR DHL SUPPORTED BY PROOF OF DELIVERY OF THIS DEFAULT NOTICE TO KAPPA . . . AT 525 SEVENTH AVENUE SUITE 501 NEW YORK, NY 10018 ISSUED BY FEDEX/DHL OR FEDEX/DHL WRITTEN CONFIRMATION EVIDENCING INABILITY TO DELIVER FOR ANY REASON WHATSOEVER" (127 AD3d at 162).

Plaintiffs submitted signed letters of default notice to Kappa, sent via FedEx, and written confirmations from FedEx evidencing inability to deliver. The bank refused to pay on the letter of credit because, instead of one FedEx notice of inability to deliver being addressed to BasicNet and the other being addressed to Basic Properties, they were both addressed to Basic-Net. However, this Court observed that since both FedEx notices stated that Kappa had moved, it was irrelevant whether BasicNet or Basic Properties sent the package—Kappa would not have received it in either event. The Court therefore considered the fact that both FedEx confirmations were addressed to BasicNet to be a " 'nonmeaningful' error" (127 AD3d at 173).

Federal case law construing UCC 5-108 (a) agrees that certain types of minor discrepancies may not be used to establish a failure of strict compliance. Even under the strict compliance standard, some variances may be allowable, if they do not "call upon the reviewing bank officer to exercise discretion on a commercial matter, [but] only to exercise discretion as a banker," or if the errors "[do] not compel an inquiry into the underlying commercial transaction" (*E & H Partners*, 39 F Supp 2d at 284).

In the Official Comment to UCC 5-108 (a), the drafters expressly endorse the conclusion of the court in *New Braunfels Natl. Bank v Odiorne* (780 SW2d 313 [Tex App 1989]), rejecting the propriety of a bank's dishonor of a letter of credit based on the draft's reference to "Irrevocable Letter of Credit No. 86-122-5" instead of "86-122-*S*" (at 316). The Texas court held that it would be obvious to any bank document examiner that the discrepancy was merely a typographical or clerical error and of no possible significance, and stressed that it was not replacing the strict compliance standard with the more relaxed substantial compliance standard, but, rather, that, under these conditions, strict compliance "means something less than absolute, perfect compliance" (*id.* at 318).

Another instructive case endorsed in the Official Comment is *Tosco Corp. v Federal Deposit Ins. Corp.* (723 F2d 1242 [6th Cir 1983]), where the letter of credit required that a draft contain the following legend: "drawn under Bank of Clarksville Letter of Credit Number 105" (at 1247). The bank refused to honor the presentation because the draft presented to the Bank of Clarksville stated: "Drawn under Bank of Clarksville, Clarksville, Tennessee letter of Credit No. 105" (*id.*). The bank found a lack of strict compliance because of the use of the lowercase "l" rather than an uppercase "L" in "Letter," the use of "No." instead of "Number," the addition of the word "Tennessee" after the word "Clarksville," and the fact that the language was placed on the draft by Tosco, and not by the negotiating bank (*id.*). The court rejected the bank's strict compliance defense because, despite those minor variations, the presentation conformed (*id.* at 1248).

Also illustrative is *Bank of Cochin Ltd. v Manufacturers Hanover Trust Co.* (612 F Supp 1533, 1541 [SD NY 1985], *supra*), where the court found that the failure of the beneficiary to provide a sixth set of identical documents as required in the letter of credit did not violate the strict compliance standard, since such failure "could not have misled the bank."

While these federal decisions are not controlling, similar reasoning has been adopted by the New York State Bar Association Committee Report, which confirms that the strict compliance standard of the revised UCC 5-108 (a) "does not mean absolute and unswerving conformity to the terms of the letter of credit," but, rather, "is to be determined by standard practice of financial institutions that regularly issue letters of credit" (McKinney's Cons Laws of NY, Book 62½, UCC 5-108 at 364).

In the matter before us, there is no possibility that the presentation of a true copy of amendment 2, instead of the original, could mislead defendant to its detriment. Indeed, this copy had been prepared by defendant itself, and was provided to plaintiff by defendant's own attorney. Its accuracy was not in dispute, and there is no dispute regarding the content of the document, which merely extended the expiration date of the letter of credit and which had since been superseded by subsequent amendments. Since the submission of a true copy of amendment 2 would not compel any inquiry by the bank into the underlying transaction, the rationale for the strict compliance rule, "to protect the issuer from having to know the commercial impact of a discrepancy in the documents" (*E & H Partners*, 39 F Supp 2d at 284 [internal quotation marks omitted]), has no applicability here.

The decisions cited by defendant are all distinguishable. In *Hellenic Republic v Standard Chartered Bank* (219 AD2d 498 [1st Dept 1995], *supra*), this Court held that the documents plaintiff submitted for honor were discrepant. The letter of credit required a "SIGNED STATEMENT ON EMBASSY OF GREECE HELLENIC DEFENSE ATTACHE LETTERHEAD PURPORTEDLY SIGNED BY AN AUTHORIZED OFFICER OF EMBASSY OF GREECE, HELLENIC DEFENSE ATTACHE." Plaintiff submitted a statement on the letterhead of "EMBASSY OF GREECE, DEFENSE AND MILITARY ATTACHE" signed by a "Lt. Col. Constandinos Bairaktaris, Ass. Defense and Military Attache" (*id.* at 498). This Court found that the discrepancy was material because defendant could not be expected to determine, from the face of the documents, that "DEFENSE AND MILITARY ATTACHE" was the same as "HELLENIC DEFENSE ATTACHE" (*id.* at 498).

Similarly, in *Beyene v Irving Trust Co.* (596 F Supp 438 [SD NY 1984], *affd* 762 F2d 4 [2d Cir 1985]), the bill of lading listed the party to be notified as Mohammed Soran instead of as Mohammed Sofan. The court held that the misspelling of a

party's name was sufficient to excuse the bank from paying on the letter of credit (*Beyene*, 596 F Supp at 442). The court noted that the bank did not have to establish whether the misspelling of an Arab name was a meaningful mistake or find that it was a major error before it could claim that a discrepancy in the documents existed (*id.*).

The materiality of a misspelled name is self-evident: the misspelling requires a bank to review documents that were not prepared by it and make determinations as to their contents. However, that concern is not present here.

■ Finally, we observe that although the letter of credit at issue here may be read to require submission of the original amendments, there is some ambiguity in the plain language of the letter in that regard. The terms of the letter of credit expressly require presentation of "the original of this standby letter of credit, and all amendments, if any, and the operative notice." As a matter of contract interpretation, because the first clause requiring plaintiff to present the original letter of credit is set off by a comma from "and all amendments," the word "original" does not necessarily modify the words "and all amendments." As the court in *E & H Partners* stated, "[A]mbiguities in the instructions in a letter of credit will be resolved, if reasonableness allows, against the issuing bank" (39 F Supp 2d at 282; *see also BasicNet*, 127 AD3d at 165-167). On that theory, there was no variance between plaintiff's submission and what the letter of credit required.

Even accepting that the SLC technically required originals of amendments as well as of the letter of credit itself, the substitution of a true copy of a long-expired amendment constitutes an inconsequential defect that does not violate the strict compliance standard. While Supreme Court incorrectly used the substantial compliance standard rather than the strict compliance standard to reject defendant's refusal to honor plaintiff's demand to pay on the letter of credit, the court was nonetheless correct in its grant of summary judgment in favor of plaintiff.

Lastly, the court correctly awarded plaintiff judgment in the principal amount of $406,058.80, having declared that plaintiff's November 13, 2013 drawdown request in that amount was proper and was improperly dishonored by the bank.

Accordingly, the judgment of the Supreme Court, New York County (O. Peter Sherwood, J.), entered March 10, 2014, declaring that plaintiff's drawdown request dated November

13, 2013 under defendant's standby letter of credit was proper, and awarding plaintiff the principal amount of $405,058.80, plus interest, should be affirmed, without costs.

MAZZARELLI, J.P., ACOSTA, CLARK and KAPNICK, JJ., concur.

Judgment, Supreme Court, New York County, entered March 10, 2014, affirmed, without costs.